IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **MARGARITA HOSSEINI-BROWDER,** § | |
| § | **CIVIL ACTION NO. 5:22-cv-860** |
| *Plaintiff*, § | |
| § | **JURY TRIAL REQUESTED** |
| **v.** § | |
| § | |
| **MAHMOUD HOSSEINI AND** § | |
| **VANESSA PLATA,** § | |
| *Defendants.* § | |
| § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES Plaintiff, Margarita Hosseini-Browder, individually and as independent administrator of the estate of Justine Reyna Hosseini, as and for her Complaint against the Defendants, Mahmoud Hosseini and Vanessa Plata (collectively referred herein as "Defendants"), hereby alleges and avers as follows:

1. This is an action for damages and injunctive relief relating to the Defendants' use of JUSTINE'S in connection with goods and services in commerce constituting false designation of origin, false or misleading description of fact, false or misleading representation of fact, false endorsement, and/or unfair competition causing a likelihood of confusion as to the affiliation, connection, or association of Defendants with Justine Reyna Hosseini, or as to the origin, sponsorship, or approval of their goods, services, or commercial activities, by Justine Reyna Hosseini, and misrepresenting in commercial advertising or promotion the nature, characteristics, qualities, or geographic origin of Defendants goods, services, or commercial activities in violation of the Lanham Act, 15 U.S.C. § 1125(a) *et. seq*, and for Misappropriation of the Plaintiff's Likeness and Invasion of Privacy under V.T.C.A., Property Code § 26.005, § 26.005. Ownership After Death of Individual.

## THE PARTIES

2. Plaintiff Margarita Hosseini-Browder is a real person residing in San Antonio, Texas.

3. Defendant Mahmoud Hosseini is a real person residing in San Antonio, Texas.

4. Defendant Vanessa Plata is a real person residing in San Antonio, Texas.

5. Defendants have entered into a Texas informal marriage.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), 15 U.S.C. § 1121, and Chapter 85 of the Judiciary and Judicial Procedure Code, because federal courts have jurisdiction over Lanham Act cases, which arise under federal law and raise federal questions.

7. This Court has supplemental jurisdiction over the Texas state law claims under 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy pursuant to Article III of the United States Constitution.

8. This Court may exercise supplemental jurisdiction over the subject matter of this Civil Action for the Misappropriation of the Plaintiff's Likeness and Invasion of Privacy, TEX. PROP. CODE ANN. § 26.005, Ownership After Death of Individual, pursuant to 28 U.S.C. § 1367(a), and for any other state-law claim asserted herein arising from the same transactions or occurrences and implicating the same questions of fact and related questions of law.

9. Defendants market and sell their JUSTINE'S branded goods and services to Texas residents and in the Western District of Texas.

10. Defendants own and maintain websites, https://www.facebook.com/JustinesFood, and https://twitter.com/JustinesFood, which are accessible in the Western District of Texas, wherein Defendants advertise their food trailer under the name, likeness, and life history of

JUSTINE'S.

11. Plaintiff, who is a resident and citizen of Texas, has been injured in this District.

12. This Court may exercise personal jurisdiction over Defendants on the grounds that, inter alia, Defendants are citizens of the State of Texas and Defendants and/or Defendants' agents regularly conduct commerce in the State of Texas, deriving revenue and value therefrom so as to purposefully avail themselves of the privilege of conducting activities within the State of Texas, establishing minimum contacts sufficient to confer jurisdiction over said Defendants.

13. This Court has personal jurisdiction over Defendants because Defendants offer for sale and sells goods and services in the State of Texas, including in the Western District of Texas, under the mark JUSTINE'S.

14. This Court may exercise jurisdiction over Defendants on the grounds that, inter alia, Defendants expected their actions to be of consequence in the State of Texas and in this District and did cause and continue to cause injury to Plaintiff in the State of Texas and particularly in this District.

15. This Court has personal jurisdiction over the Defendants by virtue of their sale of products, transaction of business, and solicitation of business within the State of Texas, within this judicial district and elsewhere.

16. Furthermore, the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

17. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

18. Venue is proper in the Western District of Texas because a substantial part of the events giving rise to the claims occurred in this judicial district, the Defendants are subject to personal jurisdiction in this district, and the tort occurred within this judicial district and within others.

## FACTUAL ALLEGATIONS

19. Plaintiff is the mother and sole heir of the late Justine Reyna Hosseini.

20. Plaintiff legally adopted Justine Reyna Hosseini when she was four (4) months old and raised her as her daughter, and is the sole parent in the adoption with sole parental rights.

21. The double murder of Justine Reyna Hosseini and a friend happened in her home in the small town of Poth, Texas, which is about 36 miles southeast of San Antonio, on June 10, 2018.

22. John Waclawczyk, her estranged husband, was found guilty of Justine's murder and was sentenced to life in prison without parole.

23. The tragic event thrust Justine Reyna Hosseini into the limelight and she was the subject of substantial publicity.

24. The circumstances of Justine Reyna Hosseini's demise garnered significant attention, such that Senate Bill 1139 was introduced in the Texas legislature during the 87th Legislative Session.

25. Her overall look, likeness, and appeal are easily recognized in South Texas, amongst fans and non-fans alike.

26. Her unique likeness is famous and well known in San Antonio, Texas.

27. The basis for this lawsuit revolves around the Defendants' food trailer operated and advertised under the mark JUSTINE'S.

28. Defendants acted together in concert to open a food trailer under the name of Defendant Mahmoud Hosseini's deceased niece, Justine Reyna Hosseini ("JUSTINE").

29. In the spring of 2022, Defendants started using JUSTINE'S as a trademark and associating itself with JUSTINE for Defendants' food trailer named JUSTINE'S in the summer of 2022.

30. The use of JUSTINE'S name as a trademark and trade name for the food trailer and JUSTINE'S likeness and life story is the subject of this action.

31. Defendants' food trailer at issue, as of the day of this filing, could be viewed online at Defendants' web pages.

32. At issue in this lawsuit is the fact that the food trailer, among other things, prominently includes JUSTINE'S name.

33. This use of JUSTINE'S name and exploiting her tragic life story was done for commercial reasons to promote food sales.

34. Plaintiff has honored her daughter on web pages at https://www.facebook.com/profile.php?id=100041703625241 entitled JUSTICE FOR JUSTINE.

35. This use of JUSTINE'S name and likeness by the Defendants was done without Plaintiff's consent and has invaded her privacy and caused injury.

36. Prior to entering into the food trailer business, Defendants were aware of the fame of JUSTINE.

37. Defendants used JUSTINE because the name was famous and well known in the marketplace.

38. Defendants adopted the name of JUSTINE so that customers would associate JUSTINE with Defendants.

39. Defendants intentionally copied the JUSTINE name to link themselves to her, as stated on their Facebook page:

**I want to personally thank the community for all your support of Justines Food Truck. The name of our truck was inspired by my beautiful neice that was taken from us way to early, she is living in peace, God rest her soul. We look forward to supporting you all and are beyond grateful for your support!!!!**

40. By using JUSTINE and the good will and notoriety of her name, Defendants were able to gain instant market entry and recognition.

41. By using JUSTINE and the good will and notoriety of her name, Defendants were able to make customers to think that JUSTINE had authorized Defendants to use her name.

42. By using JUSTINE and the good will and notoriety of her name, Defendants were able to make customers to think that JUSTINE and Defendants were associated with each other.

43. By using JUSTINE and the good will and notoriety of her name, Defendants were able to make customers to think that Defendants were sponsored by JUSTINE.

44. Defendants' use of JUSTINE on or in connection with its goods or services in commerce constitutes a false designation of origin, false or misleading description of fact, false or misleading representation of fact, false endorsement, and/or unfair competition which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with JUSTINE, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by JUSTINE.

45. Defendants' use of JUSTINE in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities.

46. Defendants use of JUSTINE'S is in violation of the Lanham Act.

47. Plaintiff has requested that Defendants stop using JUSTIN'S name and likeness and Defendants have refused her request.

48. Texas provides a statutory right of publicity for deceased individuals, TEX. PROP. CODE ANN. §§ 26.001 to 26.015.

49. The Texas postmortem statute provides that a right of publicity lasts fifty (50) years from the date of the individual's death under TEX. PROP. CODE ANN. § 26.012(d)), and applies to individuals who are alive on or after September 1, 1987 whose name, voice, signature, photograph, or likeness has commercial value at the time of the individual's death; or develops commercial value after the individual's death under TEX. PROP. CODE ANN. § 26.003.

50. The postmortem right of publicity for a deceased individual expires one year under TEX. PROP. CODE ANN. § 26.010 after an individual's death if the individual both: Failed to transfer the right or has no surviving heirs under Tex. Prop. Code Ann. § 26.005.

51. Pursuant to TEX. PROP. CODE ANN. § 26.003(2), the Texas postmortem right of publicity statute states that it applies to deceased individuals whose name, voice, signature, photograph, or likeness either: Has commercial value at the time of death or Develops commercial value after death.

52. Federal courts applying Texas law on the right of publicity for natural living persons require that the person's identity be used for the value associated with it, which could be broader than mere commercial value.

53. For example, misappropriation occurs when a party appropriates for their own use or benefit another's name or likeness for reputation, prestige, social or commercial standing, public

interest or other values associated with that name or likeness.

54. The Texas postmortem right of publicity statute is not subject to a lifetime exploitation requirement and the statute protects a deceased individual's aspects of identity that either have commercial value at the time of death or develop commercial value after death under TEX. PROP. CODE ANN. § 26.003(2).

55. The Texas postmortem right of publicity statute protects aspects of a deceased individual's identity, including the individual's name (actual or assumed), voice, signature, photograph, or likeness under TEX. PROP. CODE ANN. § 26.002.

56. Texas law holds phrases and distinctive characteristics closely associated with an individual may also be protected.

57. Texas courts hold that the unauthorized commercial use of a natural living person's signature is the wrongful exercise of a valuable property right.

58. The Texas postmortem right of publicity statute allows individuals who believe they have a property right in a deceased individual's protected aspects of identity to register their claim with the Texas Secretary of State under TEX. PROP. CODE ANN. § 26.006(a).

59. Registration of a claim is prima facie evidence of a valid claim to a property right under TEX. PROP. CODE ANN. § 26.007. A registered claim is superior to a conflicting, unregistered claim unless a court invalidates the registered claim.

60. Plaintiff registered her claim with the Texas Secretary of State effective June 21, 2022.

61. Plaintiff was appointed by the Texas Probate Court for the benefit of the deceased individual as the Independent Administrator, which authorized her to file for registration.

62. In Texas, without written consent, a person may not use a deceased person's name, voice, signature, photograph, or likeness in any manner, including either in connection with products, merchandise; or goods to advertise, sell, or solicit the purchase of products, merchandise, goods, or services under TEX. PROP. CODE ANN. § 26.011.

63. The three elements of a living person's right of publicity misappropriation claim are the defendant appropriated the decedent's name or likeness for the value associated with it, and not, in an incidental manner, or for a newsworthy purpose and the decedent can be identified from the publication and there was some advantage or benefit to the defendants.

64. Violators of the Texas postmortem right of publicity statute may be liable for the greater of either $2,500; or the plaintiff's damages and the defendant's profits attributable to the unauthorized use under TEX. PROP. CODE ANN. § 26.013(a)(1) and (2).

65. A deceased daughter, through her mother and Plaintiff Margaret Hosseini-Browder, may obtain damages for certain transactions involving the marketing of her daughter's name and likeness.

66. Violators of the Texas postmortem right of publicity statute may be liable for exemplary damages under TEX. PROP. CODE ANN. § 26.013(a)(3).

67. Violators of the Texas postmortem right of publicity statute may be liable for reasonable attorneys' fees, expenses, and Court costs.

68. Plaintiff requests an award of attorneys' fees as allowed under TEX. PROP. CODE ANN. § 26.013(a).

**COUNT 1: FEDERAL FALSE DESIGNATION OF ORIGIN OR SOURCE AND FALSE ENDORSEMENT (15 U.S.C. § 1125(a))**

69. Plaintiff incorporates by reference the factual allegations of the preceding

paragraphs as though fully set forth herein.

70. Through the tragic circumstances of her death, JUSTINE'S name, image, and likeness are immediately recognizable, and have substantial goodwill in the eyes of the public. Her endorsement and association carry substantial commercial value.

71. The Lanham Act, 15 U.S.C. § 1125(a)(1), provides in part:

> Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
> 15 U.S.C. § 1125(a)(1).

72. In using JUSTINE's name, image, and likeness in the promotion of their business and in connection with Defendants' goods and services without right or authorization, Defendants knowingly and intentionally used in commerce a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact that is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of JUSTINE with Defendants, and as to JUSTINE'S sponsorship or approval of Defendants' goods and commercial activities.

73. In using JUSTINE'S name, image, and likeness in the promotion of their business and in connection with Defendants' goods and services without right or authorization, Defendants knowingly and intentionally misrepresented the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities.

74. Defendants' conduct is especially likely to confuse, given that JUSTINE is a recognized figure amongst Defendants' consumers.

75. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer damages in an amount to be proven later.

76. Defendants' use in commerce of false designations of origin or source is likely to cause consumers to believe that Defendants' goods or services and JUSTINE come from the same origin or source, or that JUSTINE sponsors or approves the goods or services of Defendants, or that Defendants and JUSTINE are somehow affiliated, connected, or associated with one another when, in fact, they are not.

77. Defendants' use in commerce of false designations of origin or source is injuring the goodwill of JUSTINE.

78. At no time has Plaintiff or JUSTINE authorized Defendants to create, distribute, sell, offer for sale, use, or otherwise put into commerce Defendants' goods and services under the JUSTINE name.

79. Defendants are knowingly and intentionally misrepresenting and falsely designating to the public the affiliation, connection, association, origin, source, endorsement, sponsorship, and approval of Defendants' goods and services to create a likelihood of confusion by the public as to the affiliation, connection, association, origin, source endorsement, sponsorship, and approval of Defendants' products.

80. Defendants' conduct constitutes a violation of 15 U.S.C. § 1125(a) and Defendants are liable to Plaintiff for such violations of the Lanham Act.

81. Pursuant to 15 U.S.C. § 1116, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing use of false designations of origin or source.

82. Defendants' false designations of origin or source is irreparably injuring Plaintiff, and unless enjoined by this Court, will continue to do so.

83. Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to damages for Defendants' violations, an accounting of profits made by Defendants on sales of its goods or services, and recovery of Plaintiff's costs of this action.

84. Defendants' actions entitle Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, Defendants' profits resulting from their unlawful conduct, reasonable attorney fees, costs, expenses, and pre- and post-judgment interest.

85. Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from further using JUSTINE'S name, likeness, and identity.

86. Defendants' violations, and their actions have been calculated to confuse, mislead, or deceive consumers, and to injure the goodwill of JUSTINE.

87. The intentional violations by Defendants makes this an exceptional case entitling Plaintiff to an award of three times its actual damages and recovery of its reasonable attorneys' fees.

**COUNT 2: RIGHT OF PUBLICITY, USE OF A DECEASED INDIVIDUAL'S NAME OR LIKENESS, INVASION OF THE RIGHT OF PRIVACY (Tex. Prop. Code Ann. § 26.005)**

88. Plaintiff incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

89. Texas law permits a cause of action for misappropriation of right of publicity and use a deceased individual's name or likeness and invasion of privacy when the defendant appropriates without consent a deceased person's name or likeness to advertise the defendant's business or product, or for some other similar commercial purpose."

90. In this case, Defendants' food trailer boldly displays JUSTINE'S name to promote its association with the JUSTINE and misappropriates her name and likeness without her consent.

91. Defendants used JUSTINE to advertise their business or product.

92. Using JUSTINE was done for a commercial purpose or advantage.

93. There is a unique quality or value in JUSTINE, that, when appropriated, would result in a commercial profit to the defendant.

94. This was all done without the Plaintiff's consent, permission, or compensation.

95. In addition to using JUSTINE without her consent, in doing so, the Defendants also casted JUSTINE in a negative light.

96. Defendants caused additional injury to the Plaintiff by portraying JUSTINE in a negative way.

97. Defendants' actions entitle Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, Defendants' profits resulting from their unlawful conduct, reasonable attorney fees, costs, expenses, and pre- and post-judgment interest.

98. Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from further using JUSTINE'S name, likeness, and identity.

99. Plaintiff is entitled to damages to compensate her for the Defendants' misappropriation of JUSTINE and for invasion of her privacy, in an amount above and beyond the jurisdictional minimum, to be later proven at trial.

**COUNT 3: COMMON LAW PASSING OFF AND UNFAIR COMPETITION**

100. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

101. Defendants have and continue to knowingly, willfully, and in bad faith commit

wrongful acts to purposefully use JUSTINE, to confuse or deceive customers to purchase Defendants' goods or services in the belief that those goods or services are associated with JUSTINE.

102. The natural and probable result of Defendants' wrongful acts is to likely confuse or deceive the public.

103. Defendants intended to and did derive a benefit from the goodwill of JUSTINE as a result of their wrongful acts.

104. Accordingly, Defendants have committed the tort of passing off in violation of the common law of the State of Texas.

105. Defendants' acts of passing off have caused and continue to cause injury to Plaintiff and JUSTINE, damage to the good will of JUSTINE, unjust enrichment of Defendants and injury to JUSTINE due to confusion, mistake, and deception in the market.

106. Under the common law of the State of Texas, Defendants' acts of passing off entitle Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, Defendants' profits resulting from their unlawful conduct, reasonable attorney fees, costs, expenses, and pre- and post-judgment interest.

107. Plaintiff is also entitled to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a) because the harm caused by Defendants' acts of passing off resulted from fraud, malice, or gross negligence as defined under Texas statute.

108. Defendants' acts of have caused and continue to cause injury and damage to the good will of JUSTINE, unjust enrichment of Defendants at the expense of JUSTINE and injury to consumers due to confusion, mistake, and deception in the market.

109. Under the common law of the State of Texas, Defendants' acts of unfair

competition entitle Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, Defendants' profits resulting from their unlawful conduct, reasonable attorney fees, costs, expenses, and pre- and post-judgment interest.

110. Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from further using JUSTINE'S name, likeness and identity.

111. Plaintiff is also entitled to exemplary damages under TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a) because the harm caused by Defendants' acts of unfair competition resulted from fraud, malice, or gross negligence as defined under Texas statute.

## NOTICE OF LITIGATION HOLD REQUIREMENT

112. Defendants are hereby notified that they are legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendants knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereinafter collectively referred to as "Potential Evidence").

113. As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets,

databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, Android-based smart phones, Windows-based smart phones, video cameras and still cameras, and any and all other locations where electronic data is stored.  These sources may also include any personal electronic, digital, and storage devices of any and all of Defendants' agents or employees if Defendants' electronically stored information resides there.

114. Defendants are hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendants' claims and/or defenses.  To avoid such a result, Defendants' preservation duties include, but are not limited to, the requirement that Defendants immediately notify their agents and employees to halt and/or supervise the auto-delete functions of Defendants' electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## JURY DEMAND

115. Plaintiff hereby demands a trial by jury.

## PRAYER

WHEREFORE, Plaintiff prays for judgment in its favor on all counts set forth in its Original Complaint and requests relief as follows:

A. Issuance of a preliminary and permanent injunction enjoining Defendants, their officers, agents, employees, servants, attorneys, successors, and assigns, and all those controlled by, acting on behalf of, in privity with, or acting in concert or active participation with Defendants, from:

1. directly or indirectly using JUSTINE or any other confusingly similar terms, or any design, symbol, or device confusingly similar to JUSTINE;

2. Falsely designating in any manner the origin or a characteristic of Defendants' goods or services, and false endorsement, unfair competition, and palming off including but not limited to directly or indirectly using the term JUSTINE or any other terms confusingly similar to the foregoing terms, or any design, symbol, or device identical or confusingly similar to JUSTINE in the manner used by Defendants;

3. Directly or indirectly distributing, marketing, offering for sale, or selling goods or services in any fashion that would state, imply, or suggest that such goods or services are themselves JUSTINE's goods or services or are connected to, associated with, sponsored or endorsed by, or come JUSTINE; and

4. Directly or indirectly inducing or enabling any third parties to market, offer for sale, or sell goods or services in any fashion that would state, imply, or suggest that such goods are themselves Plaintiff's goods or services or are connected to, associated with, sponsored or endorsed by, or come from the same source as Plaintiff's JUSTINE trade name and trademark;

5. Directly or indirectly engaging in passing off;

6. Directly or indirectly engaging in unfair competition;

      A.      A Court order directing Defendants to take any and all actions to correct any erroneous impression the public may have derived concerning the source or origin of Plaintiff's business, goods, or services;

      B.      A Court order declaring that Plaintiff has valid and enforceable concurrent use rights for Plaintiff's JUSTINE trade name and trademark;

      C.      Alternatively, a Court order directing the USPTO to grant Plaintiff a concurrent use registration for Plaintiff's JUSTINE trade name and trademark as valid and protectable;

      D.      A Court order declaring that Defendants' federal trademark registration was improperly obtained with any use and is invalid and should be cancelled by the USPTO;

      E.      A Court order declaring that Plaintiff's use of its "JUSTINE'S" trade name and trademark:

            1.      Has not and does not infringe any actual or claimed trade name or trademark of Defendants under federal or state law;

            2.      Has not and does not dilute any actual or claimed trade name or trademark of Defendants under federal or state law;

            3.      Has not and does not constitute passing off under federal or state law;

            4.      Has not and does not constitute unfair competition with Defendants under federal or state law; and

      F.      A Court order directing Defendants to provide an accounting of profits derived from their unlawful actions;

      G.      An award of damages, profits, and costs to Plaintiff from Defendants paying:

            1.      Plaintiff's actual damages and any profits of Defendants resulting from their unlawful actions;

      2.    The maximum increase in damages allowed by law for Defendants' unlawful conduct, including but not limited to three times Defendants' profits and Plaintiff's actual damages;

      3.    exemplary damages;

      4.    Plaintiff's reasonable attorney fees;

      5.    Plaintiff's costs and expenses; and

      6.    Pre-judgment and post-judgment interest; and

H.    Any such other and further relief to Plaintiff the Court may deem just and proper.

Dated: August 8, 2022

                                             Respectfully submitted,

                                             /s/ Charles W. Hanor
                                             Charles W. Hanor
                                             Texas Bar No. 08928800

                                             Ayesha M. Malik
                                             Texas Bar No. 24118449

                                             HANOR LAW FIRM PC
                                             750 Rittiman Road
                                             San Antonio, Texas 78209
                                             Telephone: (210) 829-2002
                                             trademarks@hanor.com

                                             *Attorneys For Plaintiff*