IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARGARITA HOSSEINI-BROWDER, | § | |
| | § | |
| *Plaintiff,* | § | 5:22-CV-00860-OLG-RBF |
| | § | |
| vs. | § | |
| | § | |
| MAHMOUD HOSSEINI, VANESSA | § | |
| PLATA, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Plaintiff Margarita Hosseini-Browder's

Motion for Partial Summary Judgment and Defendants Mahmoud Hosseini and Vanessa Plata's

Cross-Motion for Partial Summary Judgment. *See* Dkt. Nos. 27 & 32. All pretrial matters in this

action have been referred for resolution pursuant to Rules CV-72 and 1 of Appendix C to the

Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No.

29. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment, Dkt. No.

27, should be **DENIED.** Defendants' Cross-Motion for Partial Summary Judgment, Dkt. No. 32,

should be **GRANTED.**

## Factual and Procedural Background

This case concerns a family dispute in the aftermath of a tragedy. Plaintiff Margarita

Hosseini-Browder is the mother of the late Justine Hosseini Waclawczyk. Dkt. No. 27 at 4.

Defendant Mahmoud Hosseini is Margarita's brother and Justine's uncle. Dkt. No. 32 at 7.

Defendant Vanessa Plata is Mahmoud's wife and Justine's aunt by marriage. *Id.* at 8. Justine was the biological daughter of another sibling of Margarita and Mahmoud, but Margarita legally adopted Justine when she was four months old and raised Justine as her daughter. *Id.* at 7-8, Dkt. No. 27 at 4.

Justine's husband, John Waclawczyk, murdered Justine and her friend on June 10, 2018, at Justine's home in Poth, Texas. Dkt. No. 27 at 4. Justine was 21 years old. Dkt. No. 32 at 8. John was found guilty of murdering Justine and her friend; he was sentenced to life in prison without parole. Dkt. No. 27 at 4. Justine died intestate. *Id.* at 5.

Margarita was the court-appointed temporary administratrix of Justine's estate. Dkt. No. 27-4 at 1-3. On August 24, 2020, a court ordered Margarita, as temporary administratrix, to "deliver forthwith all of the property belonging to [Justine's] Estate" to the person the court found "legally entitled to possession of such property"—which was also Margarita. *Id.* at 1. The court further listed all the property in Justine's estate, which was "a true and complete list, return, exhibit, and account of this Estate, as required by Section 452.151 of the Texas Estates Code." Dkt. No. 32-2. The property in Justine's estate was comprised of two pit bulls, with the "total value of [the] estate" listed as $200. *Id.*

Moved by her daughter's murder and the surrounding circumstances, Margarita created a Facebook page "to provide information and support in the field of domestic abuse and violence prevention." Dkt. No. 27 at 5. Margarita alleges that she began using the names "Justice for Justine," "J4J," and "Justine" to refer to her Facebook page as early as June 30, 2018. *Id.* Margarita also created a memorial page for Justine on the National Gun Violence Memorial webpage. *Id.* Margarita organized two events in honor of Justine in 2019, a balloon release and a vigil at the Wilson County Sheriff's Office. *Id.* at 6.

Margarita continued to raise awareness by selling wristbands that read "Justice 4 Justine" and "J4J" and T-shirts with Justine's image that also said "J4J." *Id*. Margarita posted on Facebook that the proceeds of the sales went to "the continued legal costs for Justice for Justine." Dkt. Nos. 27-12, 27-13.

Also in 2019, Margarita established a billboard in Kirby, Texas featuring an image of Justine. Dkt. No. 27 at 6; Dkt. No. 27-15. The billboard quoted Justine as having said, "it's only a bad day, never a bad life." Dkt. No. 27-15. It also read "Mommy loves you from here . . . TO HEAVEN," and "J4J." *Id.*

In 2021, during the 87th legislative session, Senate Bill 1139 was introduced in the Texas legislature; it was also known as "the Justine Hosseini Act." Dkt. No. 27 at 6; Dkt. No. 27-18 at 18; Dkt. No. 27-19 at 1-2. The purpose of the bill was "to prevent murderers from controlling the disposition of a decedent's remains." Dkt. No. 35 at 3.

In March 2022, Mahmoud and Vanessa opened a food trailer named, "Justine's: A Twisted Taste." Dkt. No. 32 at 8. On April 23, 2022, the Justine's food-trailer Facebook page posted, "I want to personally thank the community for all your support of Justines [sic] Food Truck. The name of our truck was inspired by my beautiful neice [sic] that was taken from us way to [sic] early, she is living in peace, God rest her soul. We look forward to supporting you all and are beyond grateful for your support!!!!" Dkt. No. 27-33 at 39.

On June 10, 2022, the Justine's food-trailer Facebook page reshared a three-year-old post Vanessa wrote about how she missed Justine. Dkt. No. 27-33 at 2. The food-trailer page added, "Such a beautiful angel, miss you neice [sic] 4 years ago, this evil man took such a beautiful woman from us way to [sic] soon. He is paying for it the rest of his life." *Id.*

3

On June 21, 2022, Margarita registered her claim to Justine's right of publicity with the Texas Secretary of State. Dkt. No. 27 at 7; Dkt. No. 27-32.

On August 8, 2022, Margarita sued her brother Mahmoud and her sister-in-law Vanessa, asserting claims for violations of the Lanham Act, violations of the Texas Property Code, and common law unfair competition because Mahmoud and Vanessa named their food trailer "Justine's: A Twisted Taste." Dkt. No. 1.

On October 27, 2022, Margarita filed a trademark application for "Justice for Justine" with the United States Patent and Trademark Office, for the services of "providing information in the field of domestic abuse and violence prevention" and alleging a date of first use as early as June 30, 2018. Dkt. No. 27 at 6-7; Dkt. No. 27-31 at 8.

In early 2023, Mahmoud and Vanessa changed the name of the food trailer to remove their niece's name. Dkt. No. 32 at 9. Their food trailer now operates only as, "A Twisted Taste." *Id.* According to Mahmoud and Vanessa, they dropped the name "Justine" from their food trailer "not as admission of liability or any wrongdoing, but in hopes [Margarita] would end this ugly family dispute and drop her lawsuit." *Id.*

In the present motion for partial summary judgment, filed on September 28, 2023, Margarita asks the Court to find that she owns Justine's right of publicity and that Mahmoud and Vanessa violated Texas Property Code § 26.001 *et seq.* for using the name "Justine's" for their food trailer. Dkt. No. 27 at 4, 9-13. Also before the Court is Mahmoud and Vanessa's cross-motion for partial summary judgment, in which they ask the Court to find that Margarita does not own Justine's right of publicity. Dkt. No. 32 at 11, 18.

On February 6, 2024, the Court held a motion hearing on the cross-motions for partial summary judgment at which all parties appeared personally and through counsel of record. Dkt.

No. 39. On the record at the hearing, the Court encouraged the parties to mediate, which the parties and their counsel agreed to. *Id.* The case was stayed and referred to mediation. Dkt. No. 43. The parties appeared at a mediation conference before neutral Magistrate Judge Henry J. Bemporad on April 16, 2024, but ultimately did not settle this case. Dkt. Nos. 44 & 45.

On May 15, 2024, Defendants Mahmoud and Vanessa filed a motion for leave to amend their answer to add a counterclaim seeking a declaratory judgment that Margarita does not own Justine's postmortem right of publicity. Dkt. No. 47. On June 27, 2024, the Court held a motion hearing, granted Defendants' motion for leave to amend, and lifted the stay. Dkt. Nos. 51 & 52.

## Legal Standards

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174

(5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. If, however, the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## Analysis

For the reasons explained below, Plaintiff Margarita Hosseini-Browder's Motion for Partial Summary Judgment, Dkt. No. 27, fails to demonstrate that Plaintiff is entitled to relief as a matter of law. Plaintiff has not established that she is entitled to summary judgment on her postmortem right of publicity claim. Defendants, in their Cross-Motion for Partial Summary Judgment, Dkt. No. 32, however, have convinced the Court that Plaintiff does not own Justine's postmortem right of publicity. The Court finds that no issue of material fact exists regarding the ownership of the right of publicity and that Defendants are therefore entitled to summary judgment on that claim.

### A.    Plaintiff Has Not Met Her Summary Judgment Burden to Show Defendants Violated Justine's Postmortem Right of Publicity.

Plaintiff fails to convince the Court that summary judgment is warranted on her claim that Defendants violated her ownership of Justine's postmortem right of publicity. *See* Dkt. No. 27. Plaintiff has not established the essential elements of a right-of-publicity-violation claim,

including showing that the name "Justine" has commercial value and that Defendants appropriated the name for commercial benefit.

Texas provides a statutory right of publicity for deceased individuals. Tex. Prop. Code. Ann. §§ 26.001-26.015. The right of publicity prevents others from appropriating a deceased individual's identity and lasts fifty years from the date of the individual's death. *Id.* at §§ 26.011-26.012(d). The right only applies, however, to an individual "whose name, voice, signature, photograph, or likeness has *commercial value* at the time of his or her death or comes to have commercial value after that time." § 26.003(2) (emphasis added). For such individuals, the statute provides:

> [A] person may not use, without the written consent of a person who may exercise the property right, a deceased individual's name, voice, signature, photograph, or likeness in any manner, including:
>
> (1) in connection with products, merchandise, or goods; or
>
> (2) for the purpose of advertising, selling, or soliciting the purchase of products, merchandise, goods, or services.

*Id.* at § 26.011. To show a "prima facie case" that a postmortem right of publicity has been violated, a plaintiff must show "proof that (1) the defendant has appropriated another's identity and (2) is using it for trade or commercial benefit." *Elvis Presley Enters. v. Capece*, 950 F. Supp. 783, 801 (S.D. Tex. 1996), *rev'd on other grounds*, 141 F.3d 188 (5th Cir. 1998).

Plaintiff has not established any of the necessary elements of the claim such that summary judgment is warranted. First, for a right of publicity to apply to Justine's identity, Plaintiff must establish that the name "Justine" has commercial value, and to obtain summary judgment Plaintiff must show there is no genuine fact dispute on the issue. Second, Plaintiff must show that Defendants appropriated Justine's identity for trade or commercial benefit and, again, that the issue is not open to factual dispute.

7

1.    *Whether Justine's name has commercial value is a disputed issue of fact.* Plaintiff takes issue with Defendant's use of the first name, "Justine," but Plaintiff has failed to conclusively establish that the name has commercial value. For a right of publicity to exist, the deceased individual's "name, voice, signature, photograph, or likeness" must have commercial value. Tex. Prop. Code. Ann. § 26.011. Although Plaintiff submitted evidence in the form of news articles, legislation, and memorials referencing "Justine Hosseini," "Justine Waclawczyk," "Justice for Justine," and "#J4J," no such evidence concerns only the name "Justine." *See generally* Dkt. No. 27; *see also* Dkt. No. 32 at 15.

Moreover, while Plaintiff contends that she used Justine's name "in commerce for providing information in the field of domestic abuse and violence prevention," this bare assertion alone is insufficient to convince the Court that the name "Justine," as a matter of law, has commercial value. By contrast, another federal court in Texas considered whether Elvis Presley's right of publicity was violated by a restaurant's use of the name, "The Velvet Elvis." *Elvis Presley Enters.*, 950 F. Supp. at 800.  Although on appeal the Fifth Circuit did not reach the right-of-publicity question, it noted that "[o]ver 700,000 visitors" annually visited Graceland from all 50 states with merchandise sales generating "over $ 20 million in revenue over a five-year period." *Elvis Presley Enters.,* 141 F.3d at 191. Along a similar vein, a court in this District analyzing a misappropriation claim noted that Heloise Bowles "authored a newspaper column entitled 'Hints from Heloise' which appeared daily in some 580 to 600 newspapers in the United States and abroad" and that readers sent "4,000 to 5,000 letters per month" to Heloise. *Nat'l Bank of Commerce v. Shaklee Corp.*, 503 F. Supp. 533, 536 (W.D. Tex. 1980).

While Plaintiff might not be required to show Elvis-level fame to demonstrate commercial value, Plaintiff asserts few facts related to the commercial value of the name

"Justine" and certainly doesn't carry her burden on summary judgment. Although Plaintiff sold bracelets and T-shirts using the slogans "Justice for Justine" and "#J4J" on her Facebook page, Plaintiff has not alleged facts describing the amount of revenue or number of participants involved in her endeavor to provide "information in the field of domestic abuse and violence prevention." *See* Dkt. No. 27 at 10. To the extent the evidence could support a finding that "Justice for Justine" or "#J4J" has commercial value, Plaintiff does not explain how this leads to a finding that "Justine" has commercial value, as a matter of law. Viewing the evidence in the light most favorable to Defendants, the Court is unconvinced by Plaintiff's argument and evidence. *See* Dkt. No. 27 at 5-6, Exhibits 27-2-27-36.

Moreover, as Plaintiff admits in her reply, whether "Justine" has commercial value is a disputed fact issue. Dkt. No. 35 at 10. Because the statute plainly requires that a deceased individual's identity must have commercial value for a right of publicity to exist, *see* Tex. Prop. Code. Ann. § 26.011, summary judgment for Plaintiff is not appropriate.

**2.**    *Plaintiff has not conclusively established that Defendants appropriated Justine's name.* The evidence before the Court does not clearly establish that Defendants used Justine's name "for the purpose of advertising, selling or soliciting," or "for trade or commercial benefit." *See* Tex. Prop. Code. Ann. § 26.011; *see also Elvis Presley Enters.,* 950 F. Supp. at 801.

To this Court's knowledge, no case addresses the standard governing whether a defendant's use of an individual's identity constitutes misappropriation *of a right of publicity* under the Texas Property Code. On some occasions, federal courts in Texas have referred to a violation of a right of publicity and the tort of misappropriation interchangeably. *See, e.g., Henley v. Dillard Dept. Stores*, 46 F. Supp. 2d 587, 590 (N.D. Tex. 1999) ("The tort of

misappropriation of one's name or likeness is generally referred to as the 'Right of Publicity.'")
Likewise, at least one federal court in Texas has turned to the elements of a misappropriation
claim to determine whether a defendant appropriated a name in violation of the Texas Property
Code. *See Elvis Presley Enters.*, 950 F. Supp. at 801 (citing *Matthews v. Wozencraft*, 15 F.3d
432, 437 (5th Cir. 1994) for the elements of misappropriation in relation to the postmortem right
of publicity). In *Matthews*, the Fifth Circuit articulated "three elements to a misappropriation
claim under Texas law: (i) that the defendant appropriated the plaintiff's name or likeness for the
value associated with it; (ii) that the plaintiff can be identified from the publication; and (iii) that
there was some advantage or benefit to the defendant." 15 F.3d at 437 (emphasis added). In her
motion for summary judgment, Plaintiff cites the same misappropriation standard, contending
that is the standard she must meet. Dkt. No. 27 at 11 (citing *Nat'l Bank of Commerce,* 503 F.
Supp at 540). Defendants likewise agree that federal courts in Texas appear to apply the
misappropriation standard to right-of-publicity claims. Dkt. No. 32 at 17. On all three points,
Plaintiff fails to convince the Court that summary judgment is warranted.

   ***Plaintiff has not established that Defendants appropriated Justine's name for
the value associated with it.*** Plaintiff argues in conclusory fashion that Defendants' use of the
name "Justine" was for commercial benefit. Dkt. No. 27 at 11-12. According to Defendants,
however, they used Justine's name in their food trailer for the purpose of honoring and
remembering their niece. Dkt. No. 39. And the food trailer's Facebook posts seem to support this
stated purpose. Dkt. No. 27-33 at 2, 39. ("Such a beautiful angel, miss you neice [sic] 4 years
ago, this evil man took such a beautiful woman from us way to [sic] soon," "The name of our
truck was inspired by my beautiful neice [sic] that was taken from us way to [sic] early, she is
living in peace, God rest her soul."). The Court is not persuaded that Defendants sought to

exploit Justine's name for its commercial value, as opposed to using Justine's name for its *personal* value to Defendants, who contend they simply meant to honor and remember their niece. *See* Dkt. No. 32 at 8,18, Dkt. No. 27-33 (Facebook post). There is here, in other words, an unresolved fact issue.

> ***Plaintiff has not established that Justine Hosseini Waclawczyk could be identified from the former name of Defendants' food trailer***. Plaintiff argues that Justine Hosseini Waclawczyk can be identified from "Justine" because of the food trailer's Facebook post. *See* Dkt. No. 27 at 12. The Facebook post does not identify Justine by any surname, mention her husband's name, or explain her story in detail. Nor is there any evidence before the Court showing that customers of the food trailer actually identified Justine Hosseini Waclawczyk from the Facebook post. On a summary judgment, Plaintiff's argument fails.

> ***Plaintiff has not established that Defendants received an advantage or benefit from the use of Justine's name.*** Plaintiff's motion next argues in conclusory fashion that because Defendants derived revenue from the food truck, their use of the name "Justine" created a business advantage or benefit. Dkt. No. 27 at 12. But Plaintiff makes no effort to explain what revenue, if any, was attributable to the use of the name "Justine" as opposed to the overall revenue of the food trailer, which now *does not* use the name "Justine." To obtain summary judgment, Plaintiff would need to show more.

Because the evidence does not conclusively establish the required elements for a right of publicity claim, summary judgment is not warranted for Plaintiff.

### B.    Summary Judgment Is Warranted for Defendants Because Plaintiff Does Not Own Justine's Postmortem Right of Publicity.

The right of publicity is a transferable property right that can be transferred either before or after an individual's death. Tex. Prop. Code Ann. §§ 26.004-005. The statute provides that if a

right of publicity has not been transferred at or before the individual's death, the right vests as follows: "(1) if there is a surviving spouse but there are no surviving children or grandchildren, the entire interest vests in the surviving spouse . . . . (4) if there is no surviving spouse, children, or grandchildren, the entire interest vests in the surviving parents of the deceased individual." *Id.* at § 26.005(a).

It is undisputed that, at the time of Justine's death, she was married to her husband John Waclawczyk. Dkt. Nos. 27 & 32. Although Justine's husband murdered her, her right of publicity (if it exists[1]) vested in her husband via the plain language of the statute, unless there is some reason to conclude otherwise. *See* Tex. Prop. Code Ann. § 26.005(a).

Plaintiff's argument that she is Justine's sole legal heir fails to convince the Court that Plaintiff owns Justine's right of publicity. Plaintiff's motion, in a footnote, mentions constructive trusts. Dkt. No. 27 at 5.  Under Texas law, a court can impose a constructive trust upon the property of a deceased individual that passed either by inheritance or will if the beneficiary willfully and wrongfully caused the death of the deceased. *See, e.g., Bounds v. Caudle*, 560 S.W.2d 925, 928 (Tex. 1978). But Plaintiff has presented no evidence establishing that a constructive trust was in fact imposed here. The mere existence of a *right to seek* imposition of a constructive trust does not warrant a judicial conclusion that there *is in fact* a constructive trust. Nor has Plaintiff presented any argument that Justine's right of publicity was transferred via contract, trust, or testamentary document either prior to or since Justine's death. Under the plain language of the Texas Property Code, Justine's postmortem right of publicity transferred to her husband, John Waclawczyk.

---

[1] As explained above, for a deceased individual's right of publicity to exist, the deceased's identity must have commercial value. At this time, the Court is not convinced a showing of commercial value has been made.

Plaintiff's argument that the registration of her ownership of Justine's postmortem right of publicity constitutes *prima facie* evidence that she owns the right also fails to convince. *See* Dkt. No. 27 at 10-11. According to Plaintiff, she registered a claim to Justine's right of publicity pursuant to Tex. Prop. Code § 26.006(a)).[2] *See* Dkt. No. 27-3. Under § 26.007(a), such registration is *prima facie* evidence of a valid claim to the right of publicity. The *prima facie* case for Plaintiff's ownership, however, is defeated by the plain language of § 26.005(a), which shows that the right transferred by statute to Justine's husband at the time of Justine's death.

Plaintiff, next, urges that the probate court granted her Justine's right of publicity along with the rest of Justine's estate. But a deceased individual's right of publicity vests as prescribed by the Texas Property Code. *Id.* at §§ 26.004-005. The statute provides that the right can be transferred either by contract, trust, or testamentary documents, or by vesting in the family members specified. *Id.* The right of publicity here, therefore, was not automatically part of the estate that transferred to Plaintiffs, but rather property that could have transferred in any of the ways contemplated by the statute. *See, e.g., Elvis Presley Enters.,* 950 F. Supp. at 787 ("[U]nder the terms of a testamentary trust created by Elvis Presley . . . EPE is the assignee and registrant of all trademarks, copyrights, and publicity rights belonging to the Presley estate."). But here this right wasn't transferred by contract, trust, or in a will. That means its transfer was governed by § 26.005, and it went—sadly—to the husband.

Moreover, the probate court listed all the property in Justine's estate, and it did not list the right of publicity. Dkt. No. 32-2. The court certified that the two pit bulls comprised "a true and complete list, return, exhibit, and account of this Estate, as required by Section 452.151 of

---

[2] Defendants' response points out possible manipulation of Plaintiff's registration form. Dkt. No. 32 at 13-14. While possible manipulation casts doubt on the validity of Plaintiff's registration, the Court need not address the issue at this time in light of the finding that Plaintiff's registration, *even if valid*, is still defeated by the plain language of the statute showing that the right transferred to Justine's husband.

the Texas Estates Code." *Id.* The probate court did not include Justine's right of publicity as part of the estate it granted to Margarita, and considering this evidence along with the plain language of the statute this Court is convinced that Justine's right of publicity was *not* part of her estate that went to Plaintiff Margarita.

Finally, Plaintiff's argument that Defendants lack standing to challenge her ownership of the right, raised at the February 6, 2024, hearing but not in Plaintiff's briefing, is similarly unavailing. *See* Dkt. Nos. 27, 35 & 39. Plaintiff sued Defendants for trademark infringement and claimed that they appropriated Justine's postmortem right of publicity. Defendants can defend against Plaintiff's claims by challenging the validity of Plaintiff's alleged right of publicity, and Defendants have successfully done so here. Because Defendants have established that the undisputed facts show Plaintiff does not own Justine's postmortem right of publicity, summary judgment is warranted for Defendants on this issue.

**Conclusion and Recommendation**

For the reasons discussed above, it is recommended that Plaintiff's Motion for Partial Summary Judgment, Dkt. No. 27, be **DENIED.** It is also recommended that Defendants' Cross-Motion for Partial Summary Judgment, Dkt. No. 32, be **GRANTED.**

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections,

14

responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

   **IT IS SO ORDERED**.

   SIGNED this 6th day of August, 2024.

     RICHARD B. FARRER
     UNITED STATES MAGISTRATE JUDGE