FILED
January 06, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____NM_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARGARITA HOSSEINI-BROWDER, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> MAHMOUD HOSSEINI and VANESSA § <br> PLATA, § <br> § <br> Defendants. § | CIVIL NO. SA-22-CV-860-OLG |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Margarita Hosseini-Browder ("Plaintiff") seeks to recover from Defendants Mahmoud Hosseini ("Mahmoud") and Vanessa Plata ("Vanessa") (collectively, "Defendants") for their purported infringement of an unregistered mark (the "Justine Mark") and a registered mark (the "Justice for Justine Mark"). The Court held a bench trial in this matter on December 2 and 3, 2024. At the conclusion of Plaintiff's presentation of evidence, Defendants moved for a directed verdict, which the Court construes as a motion for judgment on partial findings under Rule 52(c) of the Federal Rules of Civil Procedure.[1] The Court declined to enter judgment until the close of evidence. After Defendants presented their case, they orally renewed their motion. The Court granted that motion on the record. The Court submits these Findings of Fact and Conclusions of Law pursuant to Rule 52(a)(1). To the extent necessary, all findings of fact that are labeled conclusions of law should also be considered findings of fact, and vice versa.

---

[1] Defendants' motion is improperly styled as a motion for a directed verdict. The Federal Rules of Civil Procedure abandoned such terminology in 1991 in favor of motions for judgment as a matter of law. *See* 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2521 (3d ed. 2024). In any event, such a motion is inapplicable in the context of a bench trial. *See Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 963 n.1 (5th Cir. 2016) (citing *Thanedar v. Time Warner, Inc.*, 352 F. App'x 891, 897 n.1 (5th Cir. 2009) (per curiam)). In a bench trial, the "proper vehicle" is a motion for judgment on partial findings under Rule 52(c). *See id.*

## FINDINGS OF FACT

1. Plaintiff is the adoptive mother of Justine Hosseini ("Justine"). Dkt. No. 123 at 38.

2. Justine is the biological daughter of one of Plaintiff's brothers, Morteza Hosseini ("Morteza"). *Id.*

3. Plaintiff has three other brothers, Mahtub Hosseini ("Mahtub"), Motahar Hosseini ("Motahar"), and Mahmoud. *Id.* at 38–39.

4. Mahmoud and his wife, Vanessa, maintained a close relationship with Justine during her life. *Id.* at 154–56; *see* Dkt. No. 124 at 26–27.

5. In November 2017, Justine married John Waclawczyk ("Mr. Waclawczyk"). Dkt. No. 123 at 41.

6. On June 10, 2018, Mr. Waclawczyk shot and killed Justine and one of their friends, Andrew Toscano ("Mr. Toscano"). Dkt. No. 123 at 8, 21; *see* Pl.'s Ex. 25 at 1.

7. Justine's murder received significant public attention, *see, e.g.*, Pl.'s Ex. 18, and Justine became the subject of a popular online memorial for victims of gun violence. *See* Dkt. No. 123 at 66.

8. Shortly after Justine's murder, Plaintiff created a Facebook page entitled Justice for Justine. *See id.* at 47–48.

9. In September 2018, Plaintiff sold bracelets and t-shirts on her Facebook page to commemorate the life of Justine and to raise awareness about domestic violence; each of these articles bore some variation of the Justice for Justine Mark, including J4J and Justice 4 Justine. *See* Pl.'s Exs. 11–13.

10. The proceeds from the sale of bracelets were to be used to cover legal fees and costs in a probate matter arising from Justine's murder. *See* Dkt. No. 123 at 48; Pl.'s Ex. 11 at 1.

11. Plaintiff did not sell enough bracelets and t-shirts to make a profit. *See* Dkt. No. 123 at 48.

12. In early 2019, Plaintiff purchased space on a billboard to commemorate Justine's life and legacy; that billboard bore a picture of Justine, a saying she often used, and the hashtag J4J. *See id.* at 50–51, 77; Pl.'s Ex. 14 at 1.

13. On June 10, 2019, the first anniversary of Justine's death, Mr. Waclawczyk pleaded guilty to capital murder. Pl.'s Exs. 25 at 1; 27 at 2.

14. That same day, Plaintiff hosted a balloon release to celebrate the lives of Justine and Mr. Toscano. *See* Dkt. No. 123 at 78–79; Pl.'s Ex. 7 at 1.

15. On October 29, 2019, Plaintiff participated in a candlelit vigil hosted by the Guadalupe Valley Family Violence Shelter, which honored victims of domestic violence; she promoted this event on her Facebook page. *See* Dkt. No. 123 at 49; Pl.'s Ex. 8 at 1.

16. On June 10, 2020, Plaintiff hosted a commemorative dove release to honor the life of Justine; she promoted this event on her Facebook page as well. *See* Dkt. No. 123 at 45–47, 81; Pl.'s Ex. 10.

17. Plaintiff's Facebook page garnered approximately 2,000 followers. Pl.'s Ex. 4.

18. Over the years, Plaintiff received messages from Facebook users regarding domestic violence; Plaintiff responded to these messages by directing them to seek professional assistance. *See* Dkt. No. 123 at 49–50. On some occasions, Plaintiff provided transportation and food to those who contacted her on Facebook. *Id.* at 50.

19. In early 2022, Defendants began leasing a used food trailer. *See id.* at 153–54, 163.

20. The owner of the trailer left the prior branding, A Twisted Taste, stenciled on the trailer. *Id.* at 168.

21. Defendants named their new business Justine's in remembrance of their deceased niece. *See* Dkt. No. 124 at 26, 33.

22. Rather than removing the old branding, Defendants simply added Justine's in large letters on the front of the trailer. Dkt. No. 123 at 168; Pl.'s Ex. 62.

23. Vanessa created several social media webpages for Defendants' new business, including a Facebook page entitled Justine's. *See* Dkt. No. 124 at 33.

24. While Defendants operated the food trailer, it "sat static" in a shopping center in Kirby, Texas. *See* Dkt. No. 123 at 171. The owner of the trailer retained the key needed to move it. *Id.*

25. Melissa Garcia ("Ms. Garcia"), one of Plaintiff's longtime friends, testified that she drove by Defendants' food trailer in early 2022 while on the way to patronize Plaintiff's tax business. *See id.* at 138, 140. According to Ms. Garcia, she believed that Plaintiff operated the food trailer due to the name Justine's. *Id.* at 138. The Court does not credit this testimony. The food trailer was parked with its front side (the only side bearing the name Justine's) facing away from the thoroughfare and toward the businesses in the shopping center. *See id.* at 171; Pl.'s Ex. 62. Ordinary passersby would see A Twisted Taste—not Justine's.

26. In May 2022, Defendants combined the names Justine's and A Twisted Taste, rebranding the business Justine's: A Twisted Taste. *See* Dkt. No. 123 at 164, 168; Defs.' Ex. 27 at 28.

27. On June 3, 2022, Defendants purchased a new food trailer and, thereafter, completed minor aesthetic renovations as well as some improvements to comply with food safety regulations. *See* Dkt. No. 123 at 174–75

28. Mahmoud designed a vinyl wrap for the exterior of the trailer. *Id.* at 175.

4

29. The wrap did not include A Twisted Taste and, instead, branded the trailer as Justine's. *See id.* at 175–76.

30. Shortly after the trailer was wrapped, the owner of the original trailer gave his consent for Defendants to use the name A Twisted Taste. *Id.* at 176.

31. Defendants began operating the new food trailer in July 2022. *See id.* at 177.

32. Defendants sold street food (including burgers, tacos, and fried chicken) at local events, bars, and clubs. *See id.* at 182–83; Pl.'s Ex. 67; Defs.' Ex. 3 at 1, 3–7, 12.

33. On August 8, 2022, Plaintiff initiated this action against Defendants. *See* Dkt. No. 1.

34. On October 27, 2022, Plaintiff filed a trademark application for the Justice for Justine Mark with the United States Patent and Trademark Office (the "USPTO"). *See* Dkt. No. 15-2.

35. In early 2023, Defendants covered up the name Justine's on their trailer and began marketing their business under the name A Twisted Taste. *See* Dkt. No. 123 at 180–82, 186; *see also* Defs.' Ex. 3 at 13.

36. In the following months, Defendants removed several Facebook posts from their webpage; even after doing so, some older pictures referencing Justine's remained publicly visible. *See* Dkt. No. 124 at 55; Pl.'s Ex. 82 at 1.

37. On February 6, 2024, the USPTO approved Plaintiff's application and registered the Justice for Justine Mark. *See* Pl.'s Ex. 72.

## CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367.

2. Plaintiff went to trial on several trademark claims arising out of Defendants' purported infringement of the Justine Mark and the Justice for Justine Mark. Specifically, Plaintiff asserted federal trademark infringement and false designation of origin claims under the Lanham Act, *see* 15 U.S.C. §§ 1114(1), 1125(a)(1)(A), in addition to Texas common law unfair competition and trademark infringement.[2]

3. "Ownership of trademarks is established by use, not by registration." *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990).

4. "Service mark infringement and trademark infringement are governed by identical standards. The terms can be used interchangeably when the marks are both service marks and trademarks." *See Bos. Pro. Hockey Ass'n, Inc. v. Dall. Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1009 (5th Cir. 1975).

5. "The elements of trademark infringement and false designation of origin are identical, and the same evidence will establish both claims." *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 674 (W.D. Tex. 2008) (collecting cases); *see Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.8 (5th Cir. 2010) (quoting *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998)); *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep.*

---

[2] Unfair competition is an "umbrella" term and "includes three causes of action: passing off or palming off, trade secret misappropriation, and common law misappropriation." *Conceal City, L.L.C. v. Looper L. Enf't, LLC*, 917 F. Supp. 2d 611, 618 (N.D. Tex. 2013) (citation omitted).

*Sch. Dist.*, 33 F.4th 747, 751 (5th Cir. 2022) (citing *King v. Ames*, 179 F.3d 370, 374 (5th Cir. 1999)).

6.  "A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'" *Amazing Spaces*, 608 F.3d at 235 n.7 (quoting *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2001, pet. denied)) (internal quotation marks omitted); *see Philip Morris*, 547 F. Supp. 2d at 678 (quoting *Sport Supply Grp., Inc. v. Colom. Cas. Co.*, 335 F.3d 453, 461 (5th Cir. 2003)).

7.  Thus, to prevail on any of her claims, Plaintiff must show (1) ownership of a valid mark; and (2) a likelihood of confusion produced by an infringing mark. *See All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 505 (5th Cir. 2018) (first citing *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015); and then citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)).

### UNREGISTERED TRADEMARK: THE JUSTINE MARK

8.  For a trademark to be valid, the plaintiff must use the mark as a source identifier; that is, the plaintiff must use the mark to distinguish her goods or services from those of another. *See Appliance Liquidation Outlet, L.L.C. v. Axis Supply Corp.*, 105 F.4th 362, 373 & n.5 (5th Cir. 2024); *accord Viacom Int'l, Inc. v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 185 (5th Cir. 2018).

9.  Plaintiff introduced no credible evidence that she used the Justine Mark as a source identifier; thus, Plaintiff does not own a legally protectable mark in her daughter's first name.[3]

---

[3] There is some authority for the proposition "that where, as a result of use by customers, the trade[,] or by the news media, an abbreviation has become identified in the public mind with a particular company, then that abbreviation is a protectable trademark, even if the company itself has not formally used the abbreviation as a trademark." 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 7:18 (5th ed. 2024). But Plaintiff introduced no credible evidence that the public associates Justine (as an abbreviation of Justice for Justine) with Plaintiff or any of her goods or services.

**REGISTERED TRADEMARK: THE JUSTICE FOR JUSTINE MARK**

**VALIDITY**

10. Registration of a trademark is prima facie evidence of that mark's validity. *Iancu v. Brunetti*, 588 U.S. 388, 391 (2019) (quoting 15 U.S.C. § 1115(a)).

11. "A non-registrant can rebut a presumption of trademark validity by showing that the registrant had not established valid ownership rights in the mark at the time of registration . . . ." *Dall. Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 644 (N.D. Tex. 2009) (citation omitted); *see* 15 U.S.C. § 1115(a).

12. Defendants introduced insufficient evidence to rebut the presumption of validity with respect to the Justice for Justine Mark.

**LIKELIHOOD OF CONFUSION**

13. "Liability for trademark infringement hinges upon whether a likelihood of confusion exists between the marks at issue." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998) (citing *Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs, Inc.*, 41 F.3d 223, 227 (5th Cir. 1995)).

14. The plaintiff bears the burden of proving that "the defendant's use of the mark creates a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship of the product or service at issue." *All. for Good Gov't*, 901 F.3d at 508 (quoting *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008)) (cleaned up).

15. "The required showing is a 'probability' of confusion, not merely a 'possibility.'" *Id.* (quoting *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009)).

16. Likelihood of confusion is evaluated by reference to "a non-exhaustive list of factors known as the 'digits of confusion.'" *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 620 (5th Cir. 2023) (quoting *Xtreme Lashes*, 576 F.3d at 227).

17. "The digits are: '(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers.'" *Id.* (quoting *Xtreme Lashes*, 576 F.3d at 227).

### TYPE OF TRADEMARK

18. The type of trademark refers to the senior mark's strength and is analyzed by reference to the following factors: "(1) the mark's position along the distinctiveness spectrum, and (2) 'the standing of the mark in the marketplace.'" *Id.* at 621 (quoting *Springboards*, 912 F.3d at 814).

### DISTINCTIVENESS SPECTRUM

19. Marks are classified along a spectrum of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 451 (5th Cir. 2017) (quoting *Nola Spice Designs*, 783 F.3d at 537). "The latter three categories are inherently distinctive, whereas generic marks cannot be distinctive and descriptive marks are distinctive only if they have acquired secondary meaning." *Id.* (quoting *Nola Spice Designs*, 783 F.3d at 537) (cleaned up).

20. "Descriptive marks are marks that denote 'a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients.'" *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 566 (5th Cir. 2005) (quoting *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir. 1983)).

9

21.   A suggestive mark "suggests, rather than describes, some particular characteristic of a good or service and requires the consumer to exercise his or her imagination in order to draw a conclusion as to the nature of the goods or services." *Cathey Assocs., Inc. v. Beougher*, 95 F. Supp. 2d 643, 650 (N.D. Tex. 2000) (citing *Union Nat'l Bank of Tex.*, 909 F.2d at 845).

22.   "Arbitrary and fanciful marks have no relation to the product or service." *Springboards*, 912 F.3d at 814 (citation omitted).

23.   The Justice for Justine Mark is, at a minimum, suggestive. It requires no small amount of imagination to associate its words with Plaintiff's services (providing information in the field of domestic abuse and violence prevention). Indeed, only the word Justice even hints at the nature of Plaintiff's services.

### STANDING IN THE MARKETPLACE

24.   "Marks may be strengthened in the marketplace by extensive advertising, length of time in business, public recognition, and uniqueness." *Bd. of Regents of the Univ. of Hous. Sys. v. Hous. Coll. of L., Inc.*, 214 F. Supp. 3d 573, 585 (S.D. Tex. 2016) (quoting *Homax Prods., Inc. v. Homax, Inc.*, No. 08-cv-1560, 2009 WL 7808951, at *6 (S.D. Tex. Aug. 5, 2009)).

25.   A trademark's standing in the marketplace is "more important" than its position on the distinctiveness spectrum "in assessing the overall strength of a mark." *Joyce Yang Corp. v. Yi-Ding Int'l Holding Co. Ltd.*, No. 24-cv-628, 2024 WL 4101927, at *4 (W.D. Tex. July 30, 2024) (citing *Bd. of Regents of the Univ. of Hous. Sys.*, 214 F. Supp. 3d at 585).

26.   While Justine—the person—received significant public attention after her murder, Plaintiff's related enterprise never garnered more than a small internet following. In other words, the Justice for Justine Mark lacks standing in the marketplace. Accordingly, the first digit weighs slightly against a likelihood of confusion. *See, e.g., Springboards*, 912 F.3d at 815 ("[A]lthough

the fact that three of Springboards' marks are suggestive would normally indicate that the marks are strong, the strength of Springboards' marks is substantially undercut by their lack of recognition in the market and widespread third-party use." (citing *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 315–17 (5th Cir. 1981))).

### MARK SIMILARITY[4]

27. Mark similarity "requires consideration of the marks' appearance, sound, and meaning." *Smack Apparel*, 550 F.3d at 479 (citing *Capece*, 141 F.3d at 201).

28. In assessing mark similarity, emphasis is placed on the "dominant features of a mark." *Streamline Prod.*, 851 F.3d at 454 (quoting *Xtreme Lashes*, 576 F.3d at 228).

29. The question is whether, "under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association." *Xtreme Lashes*, 576 F.3d at 228 (citing *Capece*, 141 F.3d at 201).

30. The marks at issue here contain a common dominant feature: the name Justine. Furthermore, both marks use Justine to refer to the same person—Plaintiff's deceased daughter. The common dominant word is, thus, significant to the appearance, sound, and meaning of both marks. *See Streamline Prod.*, 851 F.3d at 454; *Trojan Battery Co., LLC v. Trojan EV, LLC*, No. 21-cv-3075, 2024 WL 1331783, at *21 (S.D. Tex. Mar. 28, 2024); *Vesta Corp. v. Vesta Mgmt. Servs., LLC*, No. 15-719, 2016 WL 8710440, at *7 (S.D. Tex. Sept. 30, 2016).

31. However, the similarity between the two marks is offset by another dominant feature, Justice, used in the Justice for Justine Mark. The inclusion of this word disrupts the visual and auditory similarities.

---

[4] Defendants used different marks during their operation of the food trailers, including Justine's and Justine's: A Twisted Taste. After examining the former, which more closely resembles the Justice for Justine Mark, the Court concludes that there is no likelihood of confusion. For this reason, the Court need not examine the latter.

32. Taking the "total effect of the designation, rather than on comparison of individual elements," this digit neither favors nor detracts from the likelihood of confusion and is, therefore, neutral. *See Xtreme Lashes*, 576 F.3d at 228 (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260–61 (5th Cir. 1980)).

### SIMILARITY OF PRODUCTS OR SERVICES

33. "The greater the similarity between the products and services, the greater the likelihood of confusion." *Xtreme Lashes*, 576 F.3d at 229 (quoting *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)) (internal quotation marks omitted).

34. Indeed, "substantial dissimilarities" between the products and services reduces the "likelihood of confusion in the minds of potential purchasers." *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 172 (5th Cir. 1986).

35. This digit weighs strongly against a likelihood of confusion. Plaintiff is in the business of providing information about domestic abuse and violence prevention, both through the sporadic sale of memorabilia and informal communication with other Facebook users. Defendants sell street food.

### OUTLET AND PURCHASER IDENTITY

36. "Dissimilarities between the retail outlets for and the predominant consumers of [the parties'] goods [or services] lesson the possibility of confusion, mistake, or deception." *Amstar*, 615 F.2d at 262.

37. The dissimilarities here are striking. Plaintiff sells products and provides services exclusively through her Facebook page to those who have been impacted by domestic abuse and violence. Defendants sell street food out of a trailer at events, bars, and clubs. This digit weighs strongly against a likelihood of confusion.

### ADVERTISING MEDIA IDENTITY

38. "The greater the degree of overlap in the marketing approaches of the two entities, the greater the likelihood of confusion." *Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*, 397 F. Supp. 3d 847, 865 (N.D. Tex. 2019) (quoting *Dall. Cowboys*, 616 F. Supp. 2d at 639) (internal quotation marks omitted).

39. The parties primarily marketed their enterprises over Facebook. Thus, there is clearly marketing overlap. *See Viacom*, 891 F.3d at 195. However, the use of "social media to advertise is now commonplace," and there is no indication that there is "overlap in followers or engaged parties." *See Savage Tavern, Inc. v. Signature Stag, LLC*, 589 F. Supp. 3d 624, 652 (N.D. Tex. 2022). Accordingly, this digit weighs only slightly in favor of a likelihood of confusion.

### INTENT

40. The intent inquiry "focuses on whether the defendant intended to derive benefits from the reputation of the plaintiff." *Streamline Prod.*, 851 F.3d at 455 (citing *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 431 (5th Cir. 1984)).

41. "If there is no evidence of intent to confuse, then this factor is neutral." *Rex Real Est.*, 80 F.4th at 623 (quoting *Viacom*, 891 F.3d at 195) (internal quotation marks omitted).

42. Defendants adopted the name Justine's with the intent to honor the legacy of their deceased niece. There is no credible evidence that Defendants named their business with the intent to confuse the public or otherwise derive benefits from Plaintiff's reputation. Thus, this digit is neutral.

### ACTUAL CONFUSION

43. "Evidence that consumers have been actually confused in identifying the defendant's use of a mark as that of the plaintiff may be the best evidence of a likelihood of

confusion." *Streamline Prod.*, 851 F.3d at 457 (quoting *Smack Apparel*, 550 F.3d at 483) (internal quotation marks omitted).

44. "A Plaintiff may show actual confusion using anecdotal instances of consumer confusion, systematic consumer surveys, or both." *Id.* (citing *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004)).

45. "Testimony of a single known incident of actual confusion by a consumer has been found to be sufficient evidence to support . . . [a] finding of actual confusion." *Id.* (citing *La. World Exposition, Inc. v. Logue*, 746 F.2d 1033, 1041 (5th Cir. 1984)).

46. Generally, in the absence of any evidence of actual confusion, this digit is neutral. *See John Crame Prod. Sols., Inc. v. R2R & D, LLC*, 861 F. Supp. 2d 792, 798 (N.D. Tex. 2012) (first citing *Smack Apparel*, 550 F.3d at 483; and then citing *Grand Time Corp. v. Watch Factory Corp.*, No. 08-cv-1770, 2011 WL 2412960, at *5 (N.D. Tex. June 10, 2011)).

47. Plaintiff furnished no credible evidence of actual confusion. Accordingly, this digit is neutral.

### CARE EXERCISED BY POTENTIAL PURCHASERS

48. Under the final digit of confusion, "the greater the care potential purchasers exercise, the less likely it is they will confuse a junior mark user's products or services with the senior mark user's products or services." *Springboards*, 912 F.3d at 817 (citing *Streamline Prod.*, 851 F.3d at 458).

49. This digit is "dependent in part on the price of the item"; that is, where the purportedly infringing product is "relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Streamline Prod.*, 851 F.3d at 458 (quoting *Smack Apparel*, 550 F.3d at 483).

50. But the fact a product is relatively inexpensive is insufficient—in and of itself—"to establish a dearth of care." *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 297 (5th Cir. 2020). Indeed, a "lack of consumer care" is usually demonstrated by testimony. *See id.* (first citing *Xtreme Lashes*, 576 F.3d at 231; and then citing *Smack Apparel*, 550 F.3d at 483).

51. Plaintiff submitted no evidence relevant to this digit. While it is true that Defendants' food items are inexpensive, that fact alone is unpersuasive. Accordingly, this digit holds "little or no relevance" to the likelihood of confusion analysis. *Id.*

### WEIGHING THE DIGITS

52. "No digit is dispositive, and the digits may weigh differently from case to case, 'depending on the particular facts and circumstances involved.'" *Xtreme Lashes*, 576 F.3d at 227 (quoting *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 218 (5th Cir. 1985)); *see Capece*, 141 F.3d at 194 (quoting *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)).

53. The digits of confusion overwhelmingly weigh against a likelihood of confusion between the competing marks. Indeed, all of the digits but one are either neutral or weigh against a likelihood of confusion. After giving each digit its appropriate weight, the Court finds no likelihood of confusion. Thus, Plaintiff cannot prevail on any of her claims.

54. The Court will assess whether this is an exceptional case warranting an award of attorney fees upon the filing of an appropriate motion by Defendants. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").

## CONCLUSION

For the forgoing reasons, Defendants are not liable to Plaintiff. Accordingly, the Clerk of Court shall enter judgment in favor of Defendants. Taxable costs shall be assessed against Plaintiff.

**SIGNED** this 5 day of January, 2025.

_____
ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE